OPINION OF THE COURT

Per Curiam.

In this proceeding to review a determination of the State Commission on Judicial Conduct directing that petitioner, a Justice of the Supreme Court, be removed from office, it is urged that the sanction imposed is unnecessarily severe and should be modified.
The commission filed a formal complaint against petitioner on September 27, 1978, setting forth 10 charges of misconduct stemming from judicial appointments made by him while he was a Judge of Erie County Court. The charges alleged, inter alia, that petitioner had made appointments in judicial proceedings pending before him to his son Timothy J. Kane, to his son’s law partner Charles E. Weston, Jr., to an employee of his son’s law firm Christopher P. Moen, and to John J. Heffron, the brother of then Erie County Court Judge William G. Heffron, during the same period of time in which Judge Heffron was making judicial appointments to petitioner’s son.
The Referee appointed to hear and report to the commission made certain findings of fact in support of each of the charges. The commission, after hearing oral arguments pursuant to section 7000.7 (a) of the Commission’s Operating Procedures and Rules (22 NYCRR 7000.7 [a]) with respect to the Referee’s report and possible sanctions in the event that the report was confirmed, dismissed two charges (VII and VIII) which pertained to petitioner’s appointments of Christopher P. Moen, a *362 law associate of petitioner’s son, but sustained the remaining eight charges of misconduct. The commission determined that: (a) by appointing his son as referee on four occasions, petitioner engaged in conduct specifically prohibited by section 33.3 (b) (4) of the Rules Governing Judicial Conduct (22 NYCRR 33.3 [b] [4]); (b) by ratifying and confirming the four reports of his son as referee, petitioner created the appearance of impropriety and failed to comply with the disqualification provision of section 33.3 (c) (1) (iv) (b) of the Rules Governing Judicial Conduct; (c) by appointing his son’s law partner to lucrative receiverships, knowing that Mr. Weston and his son were law partners and shared in the substantial fees ($51,699.20) generated by those appointments, petitioner not only violated the disqualification provisions of section 33.3 (c) (1) (iv) (b), but allowed family and other relationships to influence his judicial conduct, in violation of section 33.2 of the Rules Governing Judicial Conduct; and (d) by engaging in contemporaneous judicial cross appointments from November 17, 1975 through June 23, 1977[1] petitioner "created the appearance of serious impropriety and evinced an intention to circumvent the outright prohibition against nepotism with a disguised alternative.”
The commission unanimously determined that petitioner’s misconduct demonstrated his unfitness for judicial office and that the appropriate sanction was removal. Upon review, we accept the determination made by the commission.
The petitioner has demonstrated his unfitness for judicial office by engaging in rampant nepotism, both open and disguised. In all, petitioner, in a 19-month period, made 33 appointments of John J. Heffron while the latter’s brother was appointing petitioner’s son in 25 matters. The last appointment made on June 23, 1977, was just prior to the time petitioner was requested to appear before the commission. Without question, both Judges knew that such appointments were being made by the other Judge and attempted to conceal their disguised nepotism. As we said in Spector v State Comm. on Judicial Conduct (47 NY2d 462, 466), "nepotism is to be condemned, and disguised nepotism imports an additional component of evil because, implicitly conceding that evident nepotism would be unacceptable, the actor seeks to conceal *363 what he is really accomplishing.” By his conduct, petitioner created the appearance of serious impropriety and evinced an intention to circumvent the outright prohibition against nepotism with a disguised alternative.
More egregious and inexcusable was the direct appointment of petitioner’s son as a referee on four occasions and the ratification and confirmation of the reports of his son as referee in four cases. Whatever might be the son’s qualifications to fulfill the responsibilities as a referee, the appointment of one’s son by any Judge is both "unthinkable and intolerable”. (Spector v State Comm. on Judicial Conduct, 47 NY2d, at p 467, supra.) In appointing his son as referee and ratifying and confirming his reports as a referee, petitioner engaged in conduct which is specifically prohibited. Section 33.3 (b) (4) of the Rules Governing Judicial Conduct clearly states that a "judge shall not appoint or vote for the appointment of any person * * * as an appointee in a judicial proceeding, who is within the sixth degree of relationship of either the judge or the judge’s spouse.” We cannot accept petitioner’s explanation of this egregious and inexcusable conduct by pleading ignorance of the promulgated rules prohibiting nepotism at the time of the appointments or his further claim that "[n]epotism, at the time of the events in question, was not considered in the same light as it is now regarded.”
Nepotism has long been condemned in the judiciary, as it should be, and it borders on the incredible for a Judge to say in defense of his misconduct that he was unfamiliar with the Canons of Judicial Ethics, particularly as they apply to nepotism.[2]
Serious judicial misconduct was also involved in the two appointments made by the petitioner of his son’s law partner, Mr. Weston, as a receiver. The fees awarded to Mr. Weston, and shared by petitioner’s son, amounting to $51,699.20, were *364 certainly not nominal. Clearly, the petitioner violated that provision of the rules which requires a Judge to disqualify himself in a proceeding in which a person within the sixth degree of relationship to him "is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding”. (Rules Governing Judicial Conduct, § 33.3 [c] [1] [iv] [c].) Such conduct hardly promotes public confidence in the integrity and impartiality of the judiciary and cannot be condoned. A Judge should be required to observe "high standards of conduct so that the integrity * * * of the judiciary may be preserved.” (Rules Governing Judicial Conduct, 22 NYCRR 33.1.)
Nor do we look favorably upon petitioner’s plea for a lesser sanction than removal from office. Petitioner has demonstrated his unfitness for judicial office. He was obdurate in his nepotism, both open and disguised, almost from the time of his ascension to the Erie County Court bench until his notification of the commission’s investigation of misconduct.
Petitioner’s reliance on the sanction of admonition imposed in Spector v State Comm. on Judicial Conduct (47 NY2d 462, supra), as evincing disparity of sanction, is misplaced. In Spector, both the Referee and the commission found no quid pro quo understanding in the appointments made by Justice Spector and the other Justices involved. Also, the appointments were occasional, sporadic, fewer in number and extended over a six and one-half year period. In this case, both the Referee and the commission concluded that "[a]t the time [petitioner] was making the 33 appointments of John J. Heffron [within the 19-month period as listed in the determination], he was aware that Judge Heffron was contemporaneously appointing his son Timothy J. Kane in [25] similar proceedings.”
The most important distinction between these cases concerns the reason expressed by the commission in Spector when considering the sanction to be imposed. There, the commission expressly stated that "in determining the sanctions to be imposed upon respondent, the Commission had considered the respondent’s age (76) and imminent retirement [17 days] * * * and in light thereof, the Commission has determined that the appropriate sanction is that respondent be admonished.” Here, no such factors exist.
Accordingly, we accept the determination of the commission that petitioner be removed from judicial office.
*365 Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur in Per Curiam opinion.
Determined sanction accepted, without costs, and James L. Kane is removed from his x office of Justice of the Supreme Court of the State of New York.

. During this period, petitioner made 33 judicial appointments to John J. Heffron, the brother of then Erie County Judge William G. Heffron, while Judge Heffron made 25 judicial appointments to petitioner’s son, Timothy J. Kane.

. The first Canons of Judicial Ethics were adopted by the American Bar Association in 1924. Canon 12, as then adopted, provided in pertinent part:
“Appointees of the Judiciary and Their Compensation.
"Trustees, receivers, masters, referees, guardians and other persons appointed by a judge to aid in the administration of justice should have the strictest probity and impartiality and should be selected with a view solely to their character and fitness. The power of making such appointments should not be exercised by him for personal or partisan advantage. He should not permit his appointments to be controlled by others than himself. He should also avoid nepotism and undue favoritism in his appointments.”